UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____           │
│ DATE FILED: __12/14/2021__           │
└─────────────────────────────────────┘

KRISTOPHER A. GALICIA RODRIGUEZ,

                        Plaintiff,

        -against-

HUDSON VALLEY CHRYSLER,

                        Defendant.

20-cv-09646 (NSR)

ORDER & OPINION

NELSON S. ROMÁN, United States District Judge:

Plaintiff Kristopher A. Galicia Rodriguez ("Plaintiff") brings this action for discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law §§ 290 to 297, and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8-101 to 131.  Plaintiff asserts these claims against Hudson Valley Chrysler ("Hudson") alleging that it discriminated against him as a Mexican man.

Presently before the Court is Hudson's motion to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 16.)  For the following reasons, the motion is GRANTED.

## BACKGROUND

The following facts are taken from Plaintiff's Complaint and the documents attached thereto (ECF No. 2) and are accepted as true for purposes of this motion.

Plaintiff is a Mexican man who was previously employed at Hudson in the Sales department.  (Compl. at 4; 12.)  On July 15, 2019, Plaintiff sent an email to Hudson manager Noel Ceppelletti and human resources manager Sand Newman stating that another employee screamed

at him in front of other employees and customers and stated, "something about [him] being Mexican" and how that allows him to "get away with things." (*Id*. at 13-14.) The email also states that the same employee screamed at him a second time about his needing to go to the bathroom before a morning meeting. (*Id*.) Plaintiff stated he felt harassed by this employee and requested to meet with Ceppelletti and the owner of Hudson, as the employee was not being reprimanded for this behavior. (*Id*.) Cappelletti responded the same day stating that they could discuss the issue further, and Hudson's policy is that every employee has a safe and comfortable working environment. (*Id*.) Shortly after, Plaintiff received an "official warning" from Cappelletti for his tardiness that day. (*Id*. at 15.) Plaintiff responded that he was only late to a scheduled meeting because he went to the bathroom, and he did not understand how he could be punished for tardiness, but another employee who exhibited violent behavior was allowed to keep working. (*Id*.)

On approximately July 27, 2019, Plaintiff spoke with Cappelletti and notified him that he was no longer able to work on Sundays, and if this was an issue he would put in his two weeks' notice and would seek other employment opportunities. (*Id*. at 8.) Cappelletti stated he would discuss this with "the guys" but did not speak to Plaintiff about it again. (*Id*.) On August 4, 2019, Plaintiff did not show up for a Sunday shift. (*Id*.) On August 5, 2019, Plaintiff was written up as a warning by Cappelletti. (*Id*.) The Warning Report contains an employer's statement that states: "On Sunday July 7th, 2019 Kris called out after having a meeting with management and sales staff re: the importance of Sunday coverage. Late on Sunday July 21st. No call no show Sunday August 4th, 2019." (*Id*. at 12.) When Plaintiff referenced the phone call where he discussed Sunday shifts with Cappelletti, Cappelletti "acted like [they] had never spoke on the phone and denied it" to the human resources manager. (*Id*. at 8.) Shortly after, management announced a change to employee

schedules.  (*Id*.)  Plaintiff again approached Cappelletti about not being able to work Sundays, and in response Cappelletti stated he had to work Sundays.  (*Id*.)  Plaintiff then stated he would put in his two weeks' notice, but Cappelletti stated "it doesn't work that way, we're letting you go."  (*Id*.)  Plaintiff then cleaned up his desk and left Hudson.  (*Id*.)  Plaintiff alleges other Caucasian employees were allowed to put in two weeks' notice before leaving the company.  (*Id*.)  If allowed to put in his notice, Plaintiff would have received a $600 bonus.  (*Id*.)

On January 22, 2020, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  (*Id*. at 9.)  On March 12, 2020, the EEOC issued Plaintiff a Notice of Right to Sue.  (*Id*. at 10-11.)  The Notice of Right to Sue states "[y]our lawsuit under Title VII . . . must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost."  (*Id*.)  On November 20, 2020, Plaintiff filed the Complaint.  (*See id*.)  On April 16, 2021, the Court granted Hudson's request for leave to file a motion to dismiss, (ECF No. 14), which it filed on July 2, 2021, (ECF No. 16.)  Plaintiff opposed the motion.  (ECF No. 17.)

## <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*. at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal

conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 662, 678 (quoting Twombly, 550 U.S. at 555). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Where a *pro se* plaintiff is concerned, courts must construe the pleadings in a particularly liberal fashion. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Further, courts must interpret a *pro se* plaintiff's pleadings "to raise the strongest arguments that they suggest." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal citation omitted). Nevertheless, a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## DISCUSSION

Hudson alleges that (i) Plaintiff's Title VII claim is time barred; (ii) Plaintiff's NYCHRL claim should be dismissed as none of the relevant conduct occurred in New York City; and (iii) the Court should not exercise supplemental jurisdiction over Plaintiff's NYSHRL claim. The Court will examine each argument in turn.

I.    Title VII

Title VII provides that an employer cannot discriminate against "any individual" based on his or her "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To survive a motion to dismiss, a claimant must plausibly allege two elements: "(1) the employer discriminated

4

against him (2) because of his race, color, religion, sex, or national origin." *Lowman v. NVI LLC*, 821 F. App'x 29, 31 (2d Cir. 2020) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015)).

Before an aggrieved party can assert a Title VII claim in federal court, he is required to exhaust the administrative remedies provided by the statute. *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015). That is, a Title VII plaintiff must file a charge of discrimination with the EEOC "within three hundred days after the alleged unlawful employment practice occurred," 42 U.S.C. § 2000e-5(e)(1), and must then file an action in federal court within 90 days of receiving a right-to-sue letter from the agency, *id*. § 2000e-5(f)(1). "This statutory requirement is analogous to a statute of limitations." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996).

Here, Plaintiff was provided his right-to-sue on March 12, 2020, but did not file suit until November 20, 2020, 253 days later, which is clearly over the 90-day deadline. In response, Plaintiff argues the Court should apply the doctrine of equitable tolling. (Plaintiff's Response in Opposition to Defendant's Motion to Dismiss ("Opp.") ECF No. 17, at 2-3.) The "filing [of] a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court"; rather, it is "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). "[E]quitable tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (internal quotation marks and citations omitted). A plaintiff is not entitled to equitable tolling unless he can, "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his

filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000). "A petitioner's *pro se* status does not by itself merit equitable tolling." *Gillyard v. Herbert*, No. 01 Civ. 3427(DC)(GWG), 2003 WL 194692, at *3 (S.D.N.Y. Jan. 30, 2003).

Plaintiff alleges he faced extraordinary efforts because of the COVID-19 pandemic and acted with reasonable diligence by making repeated attempts between April and September of 2020 to contact the Court to inquire about filing procedures. (Opp. at 3.) He alleges he received filing instructions in late October of 2020 after finally speaking to someone at the White Plains Courthouse. (*Id*.) He was told to summit his documentation via email because of the pandemic, and to explain why it would be submitted after the 90-day deadline. (*Id*.) He also claims that the Court "already approved the delay due to the extenuating circumstanced (sic) of the Covid-19 pandemic which is why [Hudson] was served" and "also approved the [P]laintiff[]'s request to waive the $450 fee to file the paperwork because Plaintiff is still unemployed." (*Id*. at 3-4.)

However, a plaintiff must plead more than the existence of the pandemic to show the extraordinary circumstances required for equitable tolling. *See Gomez v. Henry St. Settlement,* No. 20-CV-5585 (AT) (BCM), 2021 WL 4943509, at *6 (S.D.N.Y. July 27, 2021) ("[T]he disruption caused by the COVID-19 pandemic — which of course affected all New Yorkers in the spring of 2020, not just plaintiff — is not, standing alone, 'sufficient to warrant equitable tolling' absent a more specific personal showing (for example, that a specific government-imposed restriction prevented him from meeting his filing deadline).") (citing *Hood v. Catholic Health Systems, Inc*., No. 1:20-cv-673, 2020 WL 8371205 at *3–5 (W.D.N.Y. Sept. 28, 2020)); *Hines v. United States*, No. 20-CV-20-10064 (CS), No. 17-CR-364-2 (CS), 2021 WL 2456679, at *2 (S.D.N.Y. June 16,

2021) ("While the effects of the COVID-19 pandemic could conceivably present extraordinary circumstances, '[a] petitioner cannot meet his burden of establishing that a court should apply the doctrine of equitable tolling simply by making a passing reference to the pandemic or the resulting lockdown.'") (citing *United States v. Aigbekaen*, No. 15-CV-462, 2021 WL 1816967, at \*1 (D. Md. May 6, 2021)).  Here, while Plaintiff was granted his right-to-sue right at the beginning of the pandemic, he fails to explain any specific circumstances or restrictions that prevented him from filing his complaint electronically.

Further, while Plaintiff alleges he acted with diligence by repeatedly contacting the Courthouse, both the Clerk's office and the *Pro Se* Intake Unit were open throughout the pandemic. *See Nunez v. Danforth*, No. 1:20-cv-10230 (PGG) (SDA), 2021 WL 1063127, at \*2 (S.D.N.Y. Mar. 18, 2021) (holding a petitioner did not establish a plausible basis for equitable tolling during the pandemic as both the Clerk's office and *pro se* filing unit stayed open).  Additionally, the Southern District of New York published multiple notices in response to the pandemic informing litigants of new rules and regulations.  Specifically, on April 1, 2020, the Southern District announced the temporary acceptance of *pro se* filings by email or by regular mail.  *See* SDNY Announces Temporary Acceptance of Pro Se Filings by Email, United States District Court for the Southern District of New York, available at https://www.nysd.uscourts.gov/sites/default/files/pdf/covid-19/Notice%20-%20Pro%20Se%20Email.pdf (April 1, 2020).  The notice provides the number for the *Pro Se* Intake Unit in case a litigant has any questions.  *Id.*  This notice was published 70 days before Plaintiff's 90-day deadline expired.

Additionally, in contrast to Plaintiff's claims, this Court has never approved the delay in filing the complaint.  Plaintiff appears to be referencing the Order granting his *in forma pauperis*

application —which was signed by a different judge— (ECF No. 3) and the Order of Service (ECF No. 5.)  Neither one of these orders discussed the 90-day deadline or Plaintiff's delay in filing, and they cannot be considered as approval of the delayed complaint.

Therefore, the Court will not apply equitable tolling to Plaintiff's Title VII claim, and it is therefore untimely.  Accordingly, Plaintiff's Title VII claim is dismissed with prejudice.[1]

## II.   NYCHRL

Plaintiff also brings a claim for discrimination under the NYCHRL.  (Compl. at 4.)  Hudson argues that this claim should be dismissed as none of the alleged conduct occurred in New York City, as Hudson is located in Newburgh, New York.  (Memorandum of Law in Support of Defendant's Rule 12(b)(6) Motion to Dismiss ("Mem." ECF No. 16, at 5-6.)  In his opposition, Plaintiff states this claim was included inadvertently, and he does not contest the dismissal of the claim.  (Opp. at 5.)  Therefore, Plaintiff's NYCHRL claim is dismissed with prejudice.

## III.   NYSHRL

Lastly, Plaintiff brings a racial discrimination claim under the NYSHRL.  (Compl. at 2.) Because the Court has granted Hudson's motion as to Plaintiff's federal claim, the Court declines to extend supplemental jurisdiction over the NYSHRL claim and dismisses this claim without

---

[1] Reading the Complaint broadly, Plaintiff also appears to assert a Section 1981 claim for racial discrimination, however neither party addresses this claim in their papers.  In the event that Plaintiff is alleging a Section 1981 claim, it fails on the merits.  To establish a claim under Section 1981, a plaintiff must allege: (1) that he or she is a member of a protected class; (2) the defendant's intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities, which include the rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 1999) (citing 24 U.S.C. § 1981(a)). Here, Plaintiff is alleging that he was fired after filing a complaint about another employee who subjected him to harassment and comments about his race, and he was not allowed to put in a two weeks' notice like other employees. (Compl. at 8.)  However, Plaintiff submits no allegations purporting to show intentional discrimination on the basis of race.  While Plaintiff alleges that "other [C]aucasian coworkers" and "other employees like Jason Waite" were allowed to put in their two weeks' notice, he does not allege any plausible facts showing that Hudson's termination of his employment was based on his race.  Additionally, while Plaintiff alleges he was subjected to harassment by another employee, and "[o]ther employees like Yasento Labor-Koroma had similar problems" with this same employee, he does not allege that this employee was a part of management or participated in the decision to terminate his employment in any way.  Therefore, Plaintiff has failed to show intentional discrimination under Section 1981.

prejudice.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . ."); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims").

Accordingly, Plaintiff's NYSHRL clam is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Hudson's motion to dismiss the Complaint is GRANTED. Plaintiff's federal claim is dismissed with prejudice.  The Court declines to consider under its supplemental jurisdiction any remaining claims that Plaintiff asserts under state law.  *See* 28 U.S.C. § 1367(c)(3).  Accordingly, the Clerk of the Court is respectfully directed to mail a copy of this order to *pro se* Plaintiff, show service on the docket, terminate the motion at ECF No. 16, and to terminate the action.


Dated: December 14, 2021                              SO ORDERED:
      White Plains, New York

                                      NELSON S. ROMÁN
                              United States District Judge